UNITED STATES BANKRUPTCY COURT
CENTRAL DIVISION, DISTRICT OF MASSACHUSETTS

In re:

Paul R. Sagendorph, II

Debtor

Chapter 13

Case No. 14-41675-MSH

**BRIEF *AMICUS CURIAE* OF THE
NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS
<u>IN SUPPORT OF DEBTOR'S POSITION</u>**

**STATEMENT OF INTEREST**

Incorporated in 1992, the National Association of Consumer Bankruptcy Attorneys (NACBA) is a non–profit organization consisting of more than 3,000 consumer bankruptcy attorneys nationwide. NACBA's corporate purposes include education of the bankruptcy bar and the community at large on the uses and misuses of the consumer bankruptcy process. Additionally, NACBA advocates nationally on issues that have a broader impact than the individual case at bar.   It is the only national association of attorneys organized for the specific purpose of protecting the rights of consumers in bankruptcy cases.  NACBA has filed *amicus curiae* briefs in various courts seeking to protect the rights of consumer bankruptcy debtors.  See, e.g., *Schwab v. Reilly*, 560 U.S. 770 (2010); *Kawaauhau* v. *Geiger*, 523 U.S. 57 (1998); *Traverse v. DeGiacomo*, 753 F.3d 19 (1st Cir. 2014), *cert. denied* Nov. 3, 2014; *Weber v. SEFCU*, 719 F.3d 72 (2d Cir. 2013).

The NACBA membership has a vital interest in the outcome of this case. Whether a chapter 13 debtor's plan may provide for the vesting of property in the creditor whose debt is secured by that property is a growing issue throughout the country.  Proper resolution of the issue is critical to debtors seeking a fresh start through the bankruptcy process.

**CONSENT**

This brief is being filed with the consent of the debtor.

**SUMMARY OF ARGUMENT**

It is well settled in this Circuit that the surrender of property by a debtor to the creditor whose debt is secured by that property does not require the creditor to take actual possession of the property.  Instead, the creditor can do – or not do – whatever it wants with the property.  The problem this presents is that as a matter of state law, title to the property remains in the debtor until the creditor takes title (such as by foreclosure).  This can result in substantial prejudice and expense to the debtor and the bankruptcy estate, which should be unnecessary.  In chapter 13, the

solution is to employ the option - expressly permitted by sections 1322(b)(8) and (9) - of providing for satisfaction of the secured claim by vesting title to the property in the creditor upon confirmation.

Application of the plain language of the Bankruptcy Code is mandatory here because it does not produce an absurd result demonstrably at odds with legislative intent. See *United States v. Ron Pair Enterprises*, 489 U.S. 235, 242 (1989) (construing Bankruptcy Code). In the absence of such a result, a court is not empowered to depart from the outcome that the language of the applicable statutes dictates. See *Law v. Siegel*, 134 S.Ct. 1188 (2014).

Vesting of property is not a new provision of section 1322; it has been a part of the Bankruptcy Code since 1978. What apparently *is* new is that debtors are now using that option in response to inaction by creditors, as leaving title to the property in the debtor or the bankruptcy estate can impose unnecessary costs and burdens on the debtor, even to the detriment of other creditors.

### I.    Statutory Framework

Chapter 13 of the Bankruptcy Code gives debtors the opportunity to adjust their financial affairs without having to liquidate their current assets. *See* 8 COLLIER ON BANKRUPTCY section 1300.01 (16th ed. 2010). In a chapter 13 case, the debtor submits a plan to repay creditors all or part of the money owed to them over a three to five year period. See 11 U.S.C. section 1321. The plan is usually funded from the debtor's future income, but claims may also be satisfied from property of the estate or property of the debtor. See 11 U.S.C. section 1322(b)(8). If the proposed plan meets the requirements set out in the Bankruptcy Code, it must be confirmed by the Bankruptcy Court. See 11 U.S.C. sections 1322, 1325.

Subchapter II of chapter 13 contains the statutory provisions applicable to chapter 13 plans. Two critical sections of this subchapter are sections 1322 and 1325. Section 1322(a) delineates the mandatory provisions for chapter 13 plans. It sets forth what the plan "shall" do. Section 1322(b) describes the *permissive* provisions that a debtor may incorporate into his or her chapter 13 plan. Subsections 1322(b)(1)-(10) provide a non-exclusive list of what a plan "may" do, and subsection (b)(11) permits a chapter 13 plan to "include any other appropriate provision not inconsistent with this title." Section 1322(b)'s list of things that a plan may do is cumulative: they are joined together with "and," meaning that using one provision does not exclude use of another. *Fed. Nat. Mtg. Ass'n. v. Ferreira*, 223 B.R. 258, 261 (D. R.I. 1998). Each listed element may be included in a plan at the option of the debtor. See *In re Nosek,* 544 F. 3d 34, 44 (1st Cir. 2008). For example, section 1322(b)(8) permits, but does not require, a plan to "provide for

2

payment of all or part of claim against the debtor from property of the estate[1] or property of the debtor." Similarly, section 1329(b)(9) states that a plan may[2] "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." The flexibility represented by these permissive provisions in the formulation of chapter 13 plans is central to congressional efforts to encourage the use of chapter 13. H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 117-18 (1977).

Section 1325(a) lists additional standards for confirmation of a chapter 13 plan. Relevant to this case, section 1325(a)(5) sets forth the criteria for the treatment of allowed secured claims provided for by the plan. A plan is entitled to confirmation if, with respect to each allowed secured claim provided for in the plan: 1) the creditor accepts the plan; 2) the debtor surrenders the collateral; or 3) the debtor treats the claim as provided for in section 1325(a)(5)(B). Put another way, the holder of an allowed secured claim has a right only to demand that the plan, in providing for the allowed secured claim, satisfy one of the alternatives in section 1325(a)(5). A creditor's consent is not required if its claim is treated pursuant to section 1325(a)(5)(B) or if the debtor surrenders the property.

It is well settled in the First Circuit that when a debtor surrenders property, he or she merely cedes his possessory rights in the collateral. See *In re Pratt*, 462 F.3d 14 (1st Cir. 2006). Without more, surrender leaves to the creditor the decision of how to deal with the surrendered collateral. *Id.* "More" is available under sections 1322(b)(8) and (9).

**ARGUMENT FOR *AMICUS CURIAE***

**II.    Surrender pursuant to section 1325(a)(5)(C) does not require consent of the secured claim holder.**

As a preliminary matter, it is clear that in this case Wells Fargo does not object to, nor could it object to, the surrender of the property pursuant to section 1325(a)(5)(C). See *Wells Fargo's Objection at* ¶3. Pursuant to section 1325, the court must confirm a plan over a creditor's objection if the plan provides for the surrender of the property, 11 U.S.C. section 1325(a)(5)(C), and otherwise complies with section 1325. *In re Hamilton*, 401 B.R. 539 (B.A.P. 1st Cir. 2009); see also *In re Puffer*, 674 F.3d 78 (1st Cir. 2012) ("After all, Congress has legislated nine requirements that must be met before a Chapter 13 plan can be confirmed, *see* 11 U.S.C. section 1325(a)(1) – (9), and we do not think that it is our province to insist upon a tenth."). Thus a creditor's consent is not required for surrender pursuant to section 1325(a)(5)(C). See *In re White*, 282 B.R. 418 (Bankr. N. D. Ohio 2002); <u>In re Harris</u>, 244 B.R. 556 (Bankr. D. Conn. 2000).

---

[1] In chapter 13, a debtor's post-petition income is property of the estate, at least to the extent required for the debtor to comply with the plan, *see* section 1306(a)(2).
[2] "May" is permissive, while "may not" is prohibitive. See section 102(4).

**III.   "Vesting" is more than "Surrender", but nothing in section 1322(b)(9) requires the creditor's consent or "acceptance" under non-bankruptcy law for vesting.**

Wells Fargo's sole argument is that it must consent to the vesting of property pursuant to section 1322(b)(9) because under applicable state law outside of bankruptcy, "acceptance" is required before a conveyance may take place. *Wells Fargo Supp. Memo. at 2*.

It is true that state law generally controls what is defined as "property" for purposes of bankruptcy. See *Butner v. United States*, 440 US 48 (1979). For example, in *Butner*, the Court stated:

> Property interests are created and defined by state law. **Unless some federal interest requires a different result**, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

*Id*. at 55 (emphasis added). The first part of the second sentence is widely overlooked. For present purposes, it is the first part ("Unless some federal interest requires a different result, …") that controls this court's decision and, for the reasons given below, requires that the court confirm the debtor's plan.

This is because under the federal Constitution, federal law is the supreme law of the land, and to the extent that a state law conflicts with federal law, the state law must give way. See, e.g.*, Arizona v. U.S.*, 132 S.Ct. 2492, 2500 (2012). The court noted in that case that where a federal statutory scheme is "so pervasive … that Congress left no room for the States to supplement it or where there is a federal interest … so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," the court infers an intent to displace state law altogether.

The Bankruptcy Code is such a statutory scheme. See generally *Central Va. Community College v. Katz*, 546 U.S. 356 (2006). It is true that in some respects, the Bankruptcy Code incorporates state law, as *Butner* stated. For example, Congress gave states the right to determine what property may be exempted from a bankruptcy estate, and whether federal or state law, or either, will control. See *Law v. Siegel*, 134 S.Ct. 1188 (2014). Absent an explicit statement to the contrary by Congress, however, it is the Bankruptcy Code that determines the rights of debtors and creditors in bankruptcy cases, absent a clear Congressional expression to the contrary. This federal interest overwhelms any interest a state may have in the subject, and any state law conflicting with the Bankruptcy Code cannot stand.

Thus, if a debtor wishes to employ the permissive provisions of section 1322(b)(8) and (9), the creditor has no basis under state law for objecting. Prior to confirmation, only the debtor

4

may propose a plan – not the trustee, not the court and certainly not a creditor[3]. In re Muessel, 292 B.R. 712 (1st Cir. B.A.P., 2003). Thus the "permission" of sections 1322(b)(8) and (9) is given exclusively to the debtor, not the creditor[4]. When the Bankruptcy Code designates who may take what action, the court has no authority to deviate from what Congress has provided. Cf. Law v. Siegel, 134 S.Ct. 1188 (2014) (Bankruptcy Court may not contravene express provisions of the Bankruptcy Code, even in the face of substantial debtor misconduct). The result is that the "vesting " provision of §1322(b)(9) trumps any state law requiring "acceptance", whether common or statutory.

### IV. There is no need to attempt to discern Congressional intent beyond the plain language of the statute.

"Traditionally, questions of statutory construction begin with the plain language of the statute; courts consider the language in the context of the statutory scheme, avoiding statutory constructions which create results that are 'senseless' or contrary to congressional intent. . . . A court should look beyond the language of the statute for interpretive guidance only where the language of the statute is ambiguous; a statute is ambiguous if it allows for more than one reasonable interpretation." *In re Coffin,* 435 B.R. 780, 785 (B.A.P. 1st Cir. 2010) (citations and internal quotations omitted).

Wells Fargo has not argued that the statute is ambiguous – rightly so, because the language of the statute is plain. Thus the court's only task is to apply the statute as written. That means, in this case, that Wells Fargo's objection, being based on inapplicable state law, must be overruled.

Instead, Wells Fargo argues that cases such as *In re Watt*, 2014 WL 5304703 (Bankr. D. Or. 2014), *appeal filed Dec. 26, 2014*, were wrongly decided, essentially because they do not apply the state law requiring "acceptance," or the creditor's consent to vesting. For all the reasons given above, that position has no merit. The Bankruptcy Code gives debtors the option of paying claims from property of the estate and of vesting property in "any entity upon confirmation or at a later time"; there is no need to go beyond the plain language of the statute. The debtor in this case is only doing what the statute permits.

### V. Cases interpreting "surrender" have no application in this case.

Wells Fargo relies rather heavily on a decision by Judge Boroff in which he denied

---

[3] Post-confirmation, the debtor, the trustee or an unsecured creditor may propose a plan amendment, but not a secured creditor. They must comply with the feasibility and best interests tests, however. *See* In re Trumbas, 245 BR 764 (Bkrtcy.D.Mass. 2000).

[4] Section 1327(b) also makes it clear, at least by necessary inference, that a plan may provide for vesting in an entity *other than* the debtor.

confirmation of a plan with substantially similar language in *In re Nazzaro*, No. 14-40808 (Bankr. D. Mass. 2014), based on his decision in *In re Cormier,* 434 B.R. 222 (Bankr. D. Mass. 2010).  Being unpublished and with only a Proceeding Memorandum to refer to, *Nazzaro* is unpersuasive.  Similarly, *Cormier* is unpersuasive because it says nothing about **vesting**.  Instead, it correctly applies binding precedent from the First Circuit regarding **surrender** to hold that the debtor could not force the creditor to "acknowledge" the surrender; the debtor in that case, however, apparently did not employ the "vesting" provision of section 1322(b)(9).  "Surrender" and "vest" are different words with different meanings.  *In re Rosa*, 495 B.R. 522 (Bankr. D. Haw., 2013).  The court must give meaning and effect to every word Congress used.  As the *Rosa* court said:

> "It is true that "surrender" does not transfer title to the property. But Congress spoke of 'vesting,' not 'surrender,' in section 1322(b)(9). Under familiar rules of statutory interpretation, courts presume that, when Congress uses different words, it means different things. The plain meaning of 'vesting' includes a present transfer of ownership. Thus, section 1322(b)(9) permits inclusion of this nonstandard provision."

<u>Id</u>. at 524.  While the creditor in *Rosa* did not object to the plan, the chapter 13 trustee did, but the court overruled the trustee's objection because the creditor was deemed to have "accepted" the plan by not objecting to vesting.  See *In re Mayberry*, 487 B.R. 44 (Bankr. D. Mass. 2013), citing *Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437 (1st Cir. B.A.P., 2009).  While the court suggested that the outcome might have been different if the creditor had objected, the decision in *In re Watt*, 2014 WL 5304703 (Bankr. D. Or. 2014), *appeal filed Dec. 26, 2014,* addresses that issue and overrules the creditor's objection.

The vesting provision of section 1322(b)(9), therefore, gives meaning and effect to "surrender" by providing a mechanism whereby record title to the property is clarified.  The Supreme Court has called vesting  "creditor protective, leaving the secured creditor roughly as well off as he would have been had the debtor not sought bankruptcy protection."  *Till v. SCS Credit Corp.*, 541 U.S. 465, 505 (2004).  Viewed this way, Wells Fargo's resistance is puzzling, especially since no other secured creditor in this case has objected to vesting.

**CONCLUSION**

A review of the plan in this case indicates that the debtor has several parcels of real property that are being treated in the same way – i.e., the debtor has provided for vesting of the property in the secured creditor.  Wells Fargo's solitary resistance is puzzling, also, because it *bargained for* the right to have the property vest in it upon default in paying the promissory note, albeit by foreclosure (or sometimes by a deed in lieu of foreclosure, which, upon information and

belief, the debtor is also pursuing) rather than vesting via a bankruptcy plan. All that vesting does is accelerate the process, which is necessary here because while other creditors have also sought, and been granted, relief from the automatic stay, Wells Fargo has not. There is no reason to further delay disposition of the property at issue, and in the face of creditor inaction, vesting is the solution.

For the reasons set forth above, and for the reasons advanced in the Debtor's Brief, the National Association of Consumer Bankruptcy Attorneys, as *amicus curiae,* respectfully requests that the objection of Wells Fargo to confirmation be overruled.

March 23, 2015

    Respectfully submitted,
    National Association of Consumer Bankruptcy Attorneys,
    By its Local Counsel,

    /s/    *David G. Baker*
    David G. Baker, Esq.
    236 Huntington Avenue Room 306
    Boston, MA   02115
    (617) 367-4260
    BBO # 634889