UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br>PAUL R. SAGENDORPH, II<br><br>Debtor | Chapter 13<br>Case No. 14-41675-MSH |

**MEMORANDUM OF DECISION ON CONFIRMATION OF THE DEBTOR'S FIRST
AMENDED CHAPTER 13 PLAN**

Section 1322(b) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) sets forth a list of provisions that may be included in a chapter 13 plan. Subsection 9 permits a plan to "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." The dispute between Paul R. Sagendorph, II, the debtor and plan proponent in this case, and Wells Fargo Bank, N.A., one of Mr. Sagendorph's creditors, is over the meaning and purpose of this subsection.

Before addressing the particulars of the parties' debate, some background is in order. On July 30, 2014, Mr. Sagendorph filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. Schedule A (real estate) of the schedules of assets and liabilities filed by Mr. Sagendorph in support of his petition reflects that he is the sole owner of three income-producing properties, including a multifamily property located at 51 Pleasant Street in Ware, Massachusetts. According to Mr. Sagendorph's schedule D (creditors holding secured claims), Wells Fargo Home Mortgage holds the only mortgage on the Pleasant Street property.[1] Mr.

---

[1] Wells Fargo Bank, N.A. clarifies that it and not Wells Fargo Home Mortgage is the Wells

Sagendorph valued the property at $89,000 and scheduled the amount of Wells Fargo's claim as $60,545.41. Wells Fargo subsequently filed a proof of claim asserting a secured claim in the amount of $61,498.99.

On August 15, 2014, Mr. Sagendorph filed his initial chapter 13 plan. The plan provided that the claims of each of the creditors holding mortgages on Mr. Sagendorph's three income-producing properties would be paid in full through a surrender and vesting of title to each property in its respective mortgagee. The plan contained three substantively identical provisions for the treatment of the three mortgagees, differentiated only by the property address and mortgagee's identity. With respect to the treatment of Wells Fargo's claim the plan provided:

> The Debtor is Surrendering the property located at 51 Pleasant Street, Ware, MA to Wells Fargo and/or any Successors and Assigns in Full Satisfaction of Any and All Claims filed. Wells Fargo and/or any Successors and Assigns will Foreclose on the property in full Satisfaction of the Mortgage, Note and any outstanding Fees. Pursuant to §§1322(b)(8) and (9), title to the property located at 51 Pleasant Street, Ware, MA shall vest in Wells Fargo and/or any Successors and Assigns upon confirmation, and the Confirmation Order shall constitute a deed of conveyance of the property when recorded at the Registry of Deeds. All secured claims will be paid by surrender of the collateral and foreclosure of the security interest. [Capitalization in the original].

Wells Fargo was the only one of the mortgagees to object to plan confirmation, arguing that Mr. Sagendorph's plan could not provide for conveyance of title to the Pleasant Street property without Wells Fargo's consent which, needless to say, Wells Fargo would not be offering. Wells Fargo protested that an involuntary transfer of title to it pursuant to Bankruptcy Code § 1322(b)(9) would be unfair and in violation of state law. It would result in the bank's

---

Fargo entity holding the mortgage on the property. Mr. Sagendorph has not disputed this assertion.

owning the property subject to other outstanding liens while simultaneously depriving it of the ability to conduct a foreclosure sale under the power of sale provisions of its mortgage by virtue of the merger of its mortgage rights into its newly acquired fee ownership rights. Wells Fargo also raised the argument that Mr. Sagendorph's plan was unconfirmable because it did not provide for the treatment of Wells Fargo's secured claim as required by Bankruptcy Code § 1325(a)(5) which, to the extent of any inconsistency, prevailed over § 1322(b)(9). I sustained Wells Fargo's objection with the caveat that I was not precluding the possibility that a properly structured chapter 13 plan which provided for vesting of property in a secured creditor was confirmable. On that basis I gave Mr. Sagendorph the opportunity to file an amended chapter 13 plan which addressed as many of Wells Fargo's concerns as possible.

Mr. Sagendorph filed his amended chapter 13 plan along with a motion for leave to amend on February 10, 2015. The plan provision setting forth the treatment of Wells Fargo's secured claim remained essentially unchanged from the prior plan except that two additional sentences, highlighted below, were added. The amended provision states:

> The Debtors are Surrendering the Residence located at 51 Pleasant Street, Ware, MA to Wells Fargo and/or any Successors and Assigns in Full Satisfaction of Any and All Claims filed. Wells Fargo and/or any Successors and Assigns will Foreclose on the property in full Satisfaction of the Mortgage, Note and any outstanding Fees. Pursuant to §§1322(b)(8) and (9),title to the property located at 51 Pleasant Street, Ware, MA shall vest in Wells Fargo and/or any Successors and Assigns upon confirmation, and the Confirmation Order shall constitute a deed of conveyance of the property when recorded at the Registry of Deeds. All secured claims will be paid by surrender of the collateral and foreclosure of the security interest. **The Registry of Deeds reflects that there are no junior mortgages, attachments, executions, or municipal/tax liens on this property. Registry of Deeds records show that the only encumbrances** (sic) **on this property is the mortgage held by Wells Fargo.**

3

Wells Fargo renewed its objection to confirmation. The parties submitted various memoranda of law staking out their respective positions. The National Association of Consumer Bankruptcy Attorneys filed an *amicus curiae* memorandum supporting confirmation of Mr. Sagendorph's plan.

Wells Fargo views § 1322(b)(9) as subservient to or pre-empted by § 1325(a)(5)(C). Bankruptcy Code § 1325(a)(5) sets forth three alternative ways a plan can satisfy secured claims and mandates that the bankruptcy court "shall" confirm a plan proposing any one of those treatments. Section 1325(a)(5)(C), the third alternative, instructs the bankruptcy court to confirm a plan if it provides with respect to an allowed secured claim that the debtor surrenders the property securing such claim to the holder of the claim.

The term "surrender" while not defined in the Bankruptcy Code has developed a distinct meaning in this circuit.  "'Surrender' in the present context is that the debtor agreed to make the collateral *available* to the secured creditor – *viz.*, to cede his possessory rights in the collateral…"[2] *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006)), (emphasis in original); *see also Canning v. Beneficial Maine, Inc. (In re Canning)*, 706 F.3d 64, 69 (1st Cir. 2013). "Vesting," which is the term used in § 1322(b)(9), is also undefined in the Code but plainly means to place one in legal possession or ownership of property. Black's Law Dictionary (9th Ed.) defines "vest" as "1. To confer ownership (of property) upon a person.

---

[2] While this definition deals with "surrender" as it is used in § 521 of the Bankruptcy Code, it would apply with equal force to the identical word as it is used in § 1325(a)(5)(C). "The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Sec'y of the Treasury*, 475 U.S. 851, 860 (1986) (internal citations and quotation marks omitted).

2. To invest (a person) with the full title to property. 3. To give (a person) an immediate, fixed right of present and future enjoyment. 4. *Hist.* To put (a person) into possession of land by ceremony of investiture." The Oxford English Dictionary (3rd ed.) defines "vest" as "To place, settle, or secure (something) in the possession of a person or persons." In the context in which these terms are used in the Bankruptcy Code, surrender is a less consequential event than vesting. Surrender means making the property available to be taken; vesting means transferring title.

In the view of Wells Fargo and the authorities upon which it relies,[3] surrender under § 1325(a)(5)(C) represents the outer limits of a chapter 13 plan's power with respect to a secured creditor's treatment because it compels the bankruptcy court to confirm a plan that provides for such treatment. Section 1322(b), on the other hand, contains a list of provisions a plan "may" include thus, according to Wells Fargo, making confirmation of plans with such provisions entirely discretionary. Essentially, the argument against confirming Mr. Sagendorph's plan is that when it comes to the plan treatment of allowed secured claims, § 1325(a)(5) occupies the

---

[3] Wells Fargo cites *In re Rosa*, 495 B.R. 522 (Bankr. D. Haw. 2013), which concluded that a plan providing for surrender coupled with vesting did not satisfy § 1325(a)(5)(C), and held that actual or constructive acceptance of the plan was required. Alternatively, Wells Fargo relies on *In re Rose*, 512 B.R. 790 (Bankr. W.D.N.C. 2014), which rejected the *Rosa* court's reasoning but nevertheless refused to confirm a vesting plan on the basis that compelling a lender to accept title would impermissibly subject the lender to liabilities relating to the real estate and impair the lender's rights under state law. In addition I note that after the parties had submitted their briefs, the bankruptcy court's decision in *In re Watt*, 520 B.R. 834 (Bankr. D. Or. 2014), which supports Mr. Sagendorph's position, was reversed on appeal by the district court. *See Bank of New York Mellon v. Watt*, 14-CV-02051-AA, 2015 WL 1879680 (D. Or. Apr. 22, 2015).

field with respect to in-kind payment, and any other proposed treatment, including § 1322(b)(9) vesting, must yield to the provisions of that section.[4]

Wells Fargo also argues that allowing a debtor to transfer property to an unwilling grantee violates state law and is bad policy to boot. Forcing a lender to accept a deed to property encumbered by other liens "will open up a variety of additional problems," maintains Wells Fargo in its memorandum of law. The lender might find itself holding title to property encumbered by liens to which it had absolutely no connection and, as a result of merger, no ability to clear by foreclosure. It would, states Wells Fargo, permit a debtor "who has created whatever problems one can think up" to rid himself of property by foisting it on his mortgagee. Wells Fargo cites the decision of the United States Supreme Court in *Butner v. U.S.*, 440 U.S. 48, 55 (1979), in which the Court stated that property rights are determined with reference to state law, and notes that Massachusetts law does not permit a mortgagor to involuntarily transfer mortgaged property to the mortgagee.

Mr. Sagendorph and his *amicus* ally are having none of this. Based on authority they bring to bear,[5] they argue that there is no basis to tether § 1325(a)(5)(C) and § 1322(b)(9). The

---

[4] Yielding would be unnecessary, of course, if pursuant to § 1325(a)(5)(A) a secured creditor consented to such treatment or was deemed to have consented by failing to object to plan confirmation. The latter circumstance applies in this case with respect to the mortgagees of Mr. Sagendorph's two other income properties, neither of whom objected to the plan's treatment of their claims. *See In re Rosa*, 495 B.R. at 524.

[5] Mr. Sagendorph and his *amicus* cite the bankruptcy court's decision in *Watt*, which as noted earlier in footnote 3, was reversed by the district court on appeal. They also urge me to follow Judge Feeney's bench ruling in *In re Gerardi*, No. 10-19028 (Bankr. D. Mass. July 24, 2014), overruling a secured creditor's objection to a plan that pursuant to § 1322(b)(9) provided for the vesting of title to real estate in the lender upon plan confirmation. I note that the bench order has not become final as reconsideration was granted and the matter stayed to allow the lender to

sections do not refer to one another and have entirely different purposes. As for the fact that involuntary vesting violates Massachusetts law they note that as federal law the Bankruptcy Code preempts state law.

Having reprised the relevant factual and procedural history of this case and the parties' arguments for and against plan confirmation, a ruling is in order. I conclude that a correct application of the relevant provisions of the Bankruptcy Code permits a chapter 13 debtor to propose a plan that provides for transferring title to mortgaged real estate to the mortgagee in full satisfaction of its claim subject to the mortgagee's right to object, in which case the court must determine if the plan has been proposed in good faith, is otherwise in compliance with the Code, and should be confirmed. This approach maintains the integrity of both § 1325(a)(5) and § 1322(b) and is consistent with the most basic principles of bankruptcy restructuring as enunciated in the Code's reorganization provisions embodied in chapters 11, 12, and 13.

Bankruptcy Code § 1322, entitled "contents of plan," offers a plan proponent a menu of provisions, some mandatory and some discretionary, to include in a chapter 13 plan. One of the optional provisions is (b)(9), which permits a plan to provide for vesting of estate property in any entity.[6] Bankruptcy Code § 1325, entitled "confirmation of plan", tells the proponent that if the

---

foreclose its mortgage. Finally they cite *In re Rosen*, No. 11-23129, document #41 (Bankr. D. Kan. Feb. 24, 2015), which permitted the surrender and vesting of a debtor's non-residential property in the mortgagee.

[6] Wells Fargo suggests that "entity" means a trustee, but that interpretation is far too narrow. Bankruptcy Code §101(15) defines entity to include a "person, estate, trust, governmental unit and United States trustee." Section 101(41) defines person to include an "individual, partnership and corporation." Further, the vesting of estate property in an entity other than the debtor through a plan provision is not in conflict with Bankruptcy Code §1327(b) which provides "[e]xcept *as otherwise provided in the plan* or the order confirming the plan, the confirmation of a plan vests

7

plan, composed of the various menu items catalogued in § 1322, meets certain baseline requirements the proponent can rest assured that the court will confirm it. One of those baseline requirements is § 1325(a)(5)(C) which requires the court to confirm a plan that provides for treatment of an allowed secured claim by the debtor's surrendering to the claimholder the property securing that claim.

Congress is presumed to have chosen deliberately the words it includes in a statute. *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529 (2013). The words "vesting of property" in § 1322(b)(9) and "surrender the property" in § 1325(a)(5)(C) are different and mean different things. Any argument that Congress intended § 1325(a)(5)(C) to trump § 1322(b)(9) and so "vest" must be read to mean "surrender" is implausible. These provisions are not in conflict.

A plan which contains a provision for transferring or vesting in the secured creditor the property that is its collateral would be compliant with and confirmable under § 1325(a)(5)(C) because a transfer of property presupposes its surrender by the transferor. Surrendering or "ceding possessory rights" *Pratt*, 462 F.3d at 19, is a preliminary step in the process of transferring title. This interpretation of vesting in § 1322(b)(9) is consistent with and presents an avenue for effectuating § 1322(b)(8) which permits "the payment of part or all of a claim against the debtor from property of the estate or property of the debtor."

---

all of the property of the estate in the debtor." (Emphasis supplied).

Does Massachusetts law permit a mortgagor to force a mortgagee to take title to mortgaged property? It does not. But the Bankruptcy Code as federal law preempts state law with which it is in conflict. *Butner*, which recognizes that property interests are created and defined by state law, hastens to add "unless some federal interest requires a different result." *Butner*, 440 U.S. at 55. "Even where state law creates the property interest, it must yield where it conflicts with the provisions of the Bankruptcy Code." *Patriot Portfolio, LLC v. Weinstein (In re Weinstein),* 164 F.3d 677, 683 (1st Cir.1999).

The paramount federal interest here is the fresh start policy of the Bankruptcy Code. The Code's reorganization provisions advance that policy. So, for example, "cramdown," the involuntary re-writing of a secured loan's basic terms, a concept completely alien to state law contract principles, is a quintessential feature of the Bankruptcy Code. In chapter 13, cramdown is another of the § 1322 menu options available to debtors for inclusion in their plans. *See* § 1322(b)(2). A secured creditor who objects to a chapter 13 plan which proposes to reduce to market the interest rate or secured balance of its loan because state law does not permit such things would be wasting its time. The same is true for a plan which provides for the involuntary transfer to the creditor of its collateral.

Applying § 1322(b)(9) consistently with its plain meaning promotes coherence in the reorganization chapters of the Bankruptcy Code. It seems a self-evident truth that wherever possible the reorganization rights of chapter 11 and chapter 13 debtors should be the same. Obviously, there are a number of areas where Congress chose to treat the two chapters differently. One example is plan voting; creditors have no right to vote on chapter 13 plans. Chapter 11 plans may provide for repayment to creditors over as many years as a debtor can

9

justify. Chapter 13 plans must be completed in no more than five years. But the differences between the two primary reorganization chapters should be cabined by explicit statutory mandate. In the absence of a statutory directive, the two chapters should offer comparable relief to debtors who seek to reorganize. Albertsons and Albert Sun should, as far as possible, have access to the same bankruptcy tools for reorganizing.

Bankruptcy Code § 1123, which is § 1322's chapter 11 analog and like § 1322 is entitled "contents of plan," provides that a plan may propose the "transfer of all or any part of the property of the estate to one or more centities." Bankruptcy Code § 1123(a)(5)(B). Just as Bankruptcy Code § 1123(a)(5)(B) authorizes so-called "dirt for debt plans" in chapter 11, § 1322(b)(9) should permit confirmation of chapter 13 plans calling for the transfer of collateral to a secured creditor in satisfaction of the creditor's debt.

None of this is to say that when confronted with a plan that proposes dirt for debt a creditor must simply relent. Courts in chapter 11 cases have declined to confirm such plans based on the specific facts of the case. *See In re Bate Land & Timber, LLC*, 523 B.R. 483, 510-11 (Bankr. E.D.N.C. 2015) (surrender of only part of creditor's collateral valued at less than the lower end of the secured creditor's claim did not provide creditor with the indubitable equivalent of its secured claim); *see also In re Arnold & Baker Farms*, 85 F.3d. 1415 (9th Cir. 1996) (value of collateral to be surrender in a partial dirt-for-debt plan was not the indubitable equivalent of creditor's secured claim). In chapter 13, a creditor who believes that a plan calling for the transfer of collateral should be denied confirmation for reasons like the ones Wells Fargo has raised here, could challenge the plan on the basis that it violates Bankruptcy Code § 1325(a)(3) as being in bad faith or contrary to Bankruptcy Code requirements. Thus, a plan proposing to

10

transfer to a mortgagee property that is contaminated or vandalized could be objected to as being proposed in bad faith. A plan proposing to transfer to a mortgagee property that is heavily encumbered or worth significantly less than the mortgage debt without also affording the mortgagee a right to participate as an unsecured creditor for any deficiency claim is another fact-specific example of a plan where a lender could raise an objection based on bad faith or non-compliance with § 1322(a)(3).

In this case there has been no claim that the Pleasant Street property is subject to environmental contamination or debtor-induced deterioration. And while it is true that Mr. Sagendorph's chapter 13 plan does not afford Wells Fargo the right to participate in the unsecured class of creditors to the extent it experiences any deficiency on its secured claim, Wells Fargo has raised no complaint about this presumably because it does not dispute Mr. Sagendorph's position as declared in his schedules that the Pleasant Street property is worth more than Wells Fargo's debt. Finally, Wells Fargo cannot complain about being forced to take property subject to other liens as Wells Fargo has not disputed Mr. Sagendorph's position that the Pleasant Street property is encumbered solely by Well Fargo's mortgage.[7]

---

[7] In any event, this brand of objection seems overblown as most banks have subsidiaries or affiliates whose purpose it is to take title to mortgaged property returned to the bank so as to avoid the merger problem which so troubles Wells Fargo in the abstract.

11

In summary, while Wells Fargo's objection to plan confirmation may apply to other cases, it does not apply to this one. The objection will be overruled and Mr. Sagendorph's motion to amend his plan will be allowed. The chapter 13 trustee will be instructed to prepare and file with the court a form of order confirming Mr. Sagendorph's amended chapter 13 plan.

Entered at Worcester, Massachusetts this 22nd day of June, 2015.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Chief Judge

Counsel Appearing:   Paul A. LaRoche, Esq.
                     Law Offices of Paul A. LaRoche
                     Gardner, Massachusetts
                     for Paul R. Sagendorph, II

                     Tatyana P. Tabachnik, Esq.
                     Harmon Law Offices
                     Newton Highlands, Massachusetts
                     for Wells Fargo Bank, N.A.

                     David G. Baker, Esq.
                     Boston, Massachusetts
                     for National Association of Consumer Bankruptcy Attorneys