# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**WILLIE D. BROWN**,                          Chapter 13
                                             Case No. 14-12357-JNF

     Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I.     INTRODUCTION

The matter before the Court is the Objection of Selene Finance LP ("Selene" or the "Mortgagee") to Confirmation of the Amended Chapter 13 Plan (the "Objection") filed by the debtor, Willie D. Brown (the "Debtor").   This case presents a controversial issue that is arising with increasing frequency in Chapter 13 cases owing to the failure of mortgagees to promptly foreclose on properties debtors no longer wish to retain.

The issue presented is whether Selene, as a mortgagee, can be compelled to accept a transfer of the Debtor's real estate pursuant to the terms of his Chapter 13 plan which provides for a surrender of the real property, followed by vesting of title to the real estate upon confirmation.  Resolution of this issue requires interpretation of several different provisions of Chapter 13 of the Bankruptcy Code, in particular the provisions of 11 U.S.C. § 1322(b)(8) and (9), relating to the contents of a Chapter 13 plan, as well as the confirmation requirements for treatment of secured claims under § 1325(a)(5)(C).

The Court heard the matter on July 23, 2015, ordered the parties to file supplemental briefs and an agreed statement of facts, and took the matter under

advisement.  Due to representations at the hearing that a foreclosure sale was "in the works" but likely would not occur before January 2016, the Court conducted a status conference on February 26, 2016.  At that status conference, Selene reported that a foreclosure sale had not been scheduled.

In their Agreed Statement of Material Facts, the parties stipulated to numerous facts and to the admissibility of eleven exhibits, which they agreed are necessary for this Court to determine the merits of the Objection. The record of proceedings in this case also reflects the procedural background and additional undisputed facts necessary for the Court to decide this contested matter.[1]  Moreover, neither party requested an evidentiary hearing.  Accordingly, the material facts necessary to decide this matter are not in dispute, and the matter is ripe for determination.  The Mortgagee's Objection to confirmation of the Debtor's plan is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(L), and this Court has authority to enter a final order in this contested matter.  The Court now makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## II.    FACTS AND PROCEDURAL BACKGROUND

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 20, 2014.  On July 27, 2014, he moved to convert his Chapter 7 case to a case under Chapter 13.  The Court granted the Debtor's motion on August 18, 2014.

---

[1] *The Court may take judicial notice of its own docket. See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir.1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

On his Schedule A – Real Property, the Debtor listed an "Equitable interest" in a condominium unit with a current value of $75,000. On Schedule D – Creditors Holding Secured Claims, he listed "Bank of America" as the holder of a mortgage on the property, with a secured claim in the amount of $120,000. He also listed on Schedule D the "Board of Trustees of Pearl Gardens Condominium Trust G&G Management" [sic] (the "Condominium Trust") as the holder of a lien against the property for condominium fees in the amount of $8,000. In addition, he listed two holders of judicial liens against the property, namely Certified Builders and Citibank, N.A., with liens in the amounts of $2,000 and $9,000, respectively.

Approximately six years before he commenced his Chapter 7 case, the Debtor took title to the condominium unit listed on his Schedule A, identified as Unit 24-2, 24 Faxon[2] Street, Stoughton, Massachusetts (the "property") by a quitclaim deed from Federal Home Loan Mortgage Corporation on April 16, 2008, which was duly recorded at the Norfolk County Registry of Deeds on June 2, 2008. The consideration for the conveyance was $115,000.00, which the Debtor partially financed through the execution of a promissory note (the "Note") in the principal amount of $110,888 in favor of Taylor, Bean & Whitaker Mortgage Corp., ("Taylor, Bean"), dated May 30, 2008. To secure his obligations under the Note, the Debtor granted a Mortgage (the "Mortgage") on the same day to Mortgage Electronic Registration Systems, Inc. ("MERS"), "solely as nominee for Lender [Taylor, Bean] and Lender's successors and assigns." The Mortgage was recorded

---

[2] Some documents, including the Debtor's deed, identify the street name as "Faxton," however, the correct spelling, as reflected on the mortgage held by Selene is "Faxon."

3

at the Norfolk County Registry of Deeds on June 2, 2008. The Debtor recorded a

Declaration of Homestead with respect to the property, pursuant to Mass. Gen. Laws ch.

188, § 1, on November 5, 2009. The Mortgage was assigned by MERS, without mention

of its status as nominee, to "BAC Home Loans Servicing, LP  FKA Countrywide Home

Loans Servicing, LP" ("BAC") by an Assignment of Mortgage dated July 11, 2011, which

was duly recorded at the Norfolk County Registry of Deeds. After the conversion of the

Debtor's Chapter 7 case to Chapter 13, the Mortgage was further assigned by Bank of

America, N.A., as successor by merger to BAC, to Selene by an Assignment of Mortgage

dated October 6, 2014, which was duly recorded at the Norfolk County Registry of Deeds

on November 18, 2014.

      In addition to the Mortgage, the parties agreed that the property is encumbered

by executions on money judgments held by CitiBank (South Dakota) N.A., recorded on

July 20, 2011, in the amount of $6,416.87, and by LVNV Funding LLC, as assignee of GE

Capital, recorded on August 23, 2012, in the amount of $23,598.03. The Debtor resided at

the property on the petition date but no longer resides there.

      On June 18, 2014, prior to the conversion of the Debtor's Chapter 7 case to a case

under Chapter 13, the Condominium Trust filed a Motion for Relief from Stay with

respect to the property through which it sought to foreclose on its statutory lien in

accordance with Mass. Gen. Laws ch. 183A.  On June 30, 2014, Bank of America, N.A. also

filed a Motion for Relief from Stay through which it sought to foreclose on the property.

In the absence of any objections, the Motion for Relief from Stay of the Condominium

Trust was allowed on July 3, 2014, and Bank of America's Motion for Relief from Stay

was allowed on July 15, 2014. As noted above, nearly two weeks later, on July 27, 2014, the Debtor moved to convert this case to one under Chapter 13, which the Court allowed on August 18, 2014.

The Debtor filed a series of Chapter 13 plans in September and October of 2014, which did not provide for any treatment of the Mortgagee's or the Condominium Trust's liens. The Chapter 13 Trustee and Selene both filed objections to confirmation of the plan filed by the Debtor on September 23, 2014. Selene asserted that the plan failed to provide for payment of the mortgage arrearage or maintenance of postpetition payments, and the Trustee asserted that the plan was not confirmable for a number of reasons, including that the Debtor failed to provide for the treatment of the secured claims held by Bank of America and the Condominium Trust. The Court sustained both objections and ordered the Debtor to file a further amended plan.

The Debtor, after hiring new counsel, filed a further amended plan on November 3, 2014 (hereinafter, the "Plan") through which he provides for modification of the secured claims of Bank of America (now Selene) and the Condominium Trust. With respect to the mortgagee, the Plan provides that the property will be surrendered pursuant to 11 U.S.C. § 1325(A)(5)(C) "in full satisfaction of the secured claim; deficiency claim (if any) will be treated as wholly unsecured and paid pro rata with other unsecured creditors" and that "[u]pon confirmation, the property shall vest in Bank of America, its successors or assigns, pursuant to § 1322(b)(8) and (9), subject to all other unavoidable liens."

With respect to the Condominium Trust, the Plan provides that the property will be surrendered pursuant to 11 U.S.C.§ 1325(a)(C) and that any deficiency claim would be paid on a pro rata basis with other general unsecured creditors, who are to be paid a dividend.  Through the Plan, the Debtor proposes to pay a dividend of approximately 17.74% to the holders of general unsecured claims in the total amount of $51,510, over the five year term of the Plan.  The Plan does not set forth the respective priorities of the claims of Bank of America (now Selene) and the Condominium Trust or provide that a portion or all of the Condominium Trust's lien has priority over the Mortgage.

Selene filed its Objection to confirmation of the Plan on November 18, 2014, maintaining that the Plan did not provide for full payment of its prepetition arrears, which it estimated to be $1,032.41, and that the provisions of 11 U.S.C. §1322(b)(8) and (9) "cannot be used to force title to an unwilling creditor."  It further stated that it did not agree to surrender and vesting, and that the vesting provisions would prevent it from conducting a foreclosure sale, resulting in its inability to remove junior liens on the property.   The Debtor filed a Response to the Objection and the matter was scheduled for hearing.  At the parties' requests, however, the hearing was continued several times.

On December 23, 2014, Selene filed a proof of claim asserting a secured claim in the total amount of $151,882.51, with prepetition arrears in the amount of $51,639.45[3] and attached a copy of the Mortgage and the Mortgage Assignments discussed above.  The

---

[3] This amount is approximately $50,000 greater than the amount of arrears asserted by Selene in its Objection.

Condominium Trust did not file a proof of claim, and the only other creditor to file a claim in this case was Atlas Acquisitions LLC, which timely filed a general unsecured claim in the amount of $28,063.05.[4]  To date, the Debtor has not sought to avoid any judicial liens on the property as impairing his homestead exemption. *See* 11 U.S.C. § 522(f).

The Debtor's monthly mortgage payment includes an escrow for real estate taxes, hazard insurance and flood insurance.  On May 6, 2015, Selene sent the Debtor a "150 Day Right to Cure Your Mortgage Default" and a "Right to Request a Modified Mortgage Loan" notification. The Debtor has not requested a loan modification as a result of that mailing.

According to the Agreed Statement of Facts, Selene and its predecessors have paid, and continue to pay, the condominium fees and charges for the property, on a prepetition and postpetition basis,[5] in order to maintain their priority position over the Condominium Trust's statutory lien.  Selene obtained a broker's price opinion, dated July 31, 2015, which estimates the present value of the property to be $139,000.00, based on comparable sales and a conventional marketing time of 90 to 120 days.

---

[4] The Atlas claim references "General Electric Capital" because the Debtor may have identified it as his creditor.  According to the Agreed Statement of Facts, it appears that the Atlas claim relates to the judicial lien claim of GE Capital and LVNV Funding LLC. The other judicial lienholder, CitiBank, did not file a proof claim, although it was given notice of the commencement of the Debtor's case.

[5] According to the Agreed Statement of Facts and Selene's proof of claim, Selene or its predecessors paid $10,173.80 in prepetition condominium fees and assessments.  It provided no figure for the postpetition amounts it has paid.

7

Neither Selene nor its predecessor, Bank of America, have initiated foreclosure proceedings with respect to the Mortgage.  Similarly, the Condominium Trust has taken no action to foreclose its statutory lien for unpaid condominium fees, although it does appear that at least some of the fees to which it is entitled have been paid by Selene or its predecessors.  The Court granted the Motions for Relief from Stay of Bank of America and the Condominium Trust in July of 2014, more than a year prior to the hearing on the Objection.   Nonetheless, the Condominium Trust did not file a proof of claim, did not object to confirmation, and has not appeared in this case since the filing of its Motion for Relief from Stay, despite receiving service of the Plan.

In the Agreed Statement of Material Facts, the parties reported that they are unaware of any damage to the property or any environmental issues related to the land upon which the condominium is built.  At the hearing held on July 23, 2015, counsel to Selene attributed the foreclosure delay to its obligation to wait until the expiration of the 150 days referenced in the May 2015 mailing to the Debtor, stating: "So that's what we are waiting on right now to see whether this will resolve itself through a foreclosure sale. . . ." which counsel represented could not be scheduled "until the expiration of the --- 150 days."  The 150 day period expired on October 3, 2015. As noted above, at the February 25, 2016 status conference, Selene reported that a date for a foreclosure sale had not been scheduled.

### III.    POSITIONS OF THE PARTIES

#### A.  <u>The Debtor</u>

The Debtor argues that the Plan, which provides for the property's surrender to, and the vesting of title in, the Mortgagee, provides for proper treatment of the Mortgagee's claim and such treatment is expressly permitted by the plain language of § 1322(b)(8), which permits a plan to provide for payment of all or part of a claim against a debtor from property of the estate or property of the debtor and § 1322(b)(9), which permits "the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity."  The Debtor maintains that surrender under § 1325(a)(5)(C) does not require the consent of the holder of the secured claim.  The Debtor further asserts that vesting is "more" than surrender, and that the creditor's consent or acceptance of a Chapter 13 plan based on vesting is not required.  The Debtor further argues that a transferee's "acceptance" of a transfer, which is required for a conveyance to take place under state law, is not required because the Bankruptcy Code preempts state law.  According to the Debtor, the provisions of § 1322(b)(8) and (9) are plain and unambiguous and permit a debtor, who is the only party who can propose a Chapter 13 plan, to employ vesting.

The Debtor adds that he has proposed the Plan in good faith.  Moreover, he points to a number of recent decisions in which bankruptcy courts have ruled that plans which provide for vesting of title can be confirmed over the objection of the secured party, including the decision of Chief Judge Hoffman in this district in <u>In re Sagendorph</u>, No. 14-41675-MSH, 2015 WL 3867955 (Bankr. D. Mass. June 22, 2015).  The Debtor also asserts

that cases narrowly interpreting "surrender" under § 1325(a)(5)(C), including Judge

Boroff's decision in In re Cormier, 434 B.R. 222 (Bankr. D. Mass. 2010) (holding that a

secured creditor could not be compelled, under Massachusetts law or the Bankruptcy

Code, to take title to property that the debtors proposed to surrender pursuant to their

Chapter 13 plan under § 1325(a)(5)(C), but which did not address the provisions of §

1322(b)(8) or (9)), have no application in this case.  The Debtor maintains that the vesting

provisions of § 1322(b)(9) "give meaning and effect to 'surrender' by providing a

mechanism whereby record title to the property is clarified[,]" especially in a case, such

as here, where a debtor does not wish to retain the property.  The Debtor finally

emphasizes that Selene bargained for the right to take the property upon default in the

Mortgage and that all § 1322(b)(8) and (9) do is accelerate the takeover process.[6]

### B. Selene

Selene does not object to a "surrender" of the property, as surrender does not effect

a transfer of title, but it does object to the vesting of title as provided under the Plan.

Selene asserts that allowing a debtor to vest title in a secured creditor over that creditor's

objection "would contradict basic contract law requiring not only delivery but also

acceptance to complete a transfer of real estate. . . [,]" citing Graves v. Hutchinson, 39

Mass. App. Ct. 634, 640, 659 N.E. 2d 1212 (1996)("Delivery [of a deed] occurs where the

---

[6] In the Debtor's original Response to the Objection, which was filed prior to Selene's proof of claim, he questioned the standing of Selene to assert the Objection, based, in part, on his contention that the Mortgage was assigned twice after Taylor, Bean ceased business operations.  Given the facts set forth in the parties' Agreed Statement of Facts, the Court will not consider issues raised by the Debtor concerning Selene's standing to object to confirmation.

grantor intends the deed to effect a present transfer of the property conveyed, and the grantee assents to the conveyance.").  It asserts that a plan that proposes to vest title in a secured creditor pursuant to § 1322(b)(8) and (9) cannot be confirmed over the objection of the secured creditor or without its express consent.  Selene maintains that these sections cannot be used to expand the use of surrender under § 1325(a)(5)(C).  Recognizing that the Debtor has the ability to propose a surrender of the property in the Plan, Selene points out that vesting is an unwarranted expansion of that ability, especially where, as here,  there are junior liens to the Mortgage.

Selene recognizes the split of authority on the issue of vesting following surrender, citing various recent decisions from this and other jurisdictions.  It argues that the decisions holding that § 1322(b)(9) permits vesting in a mortgagee upon surrender are wrongly decided.  According to Selene, the provisions of § 1322(b)(9) are a complement to and vehicle in aid of § 1327(b), which provides for vesting of property of the estate in the debtor upon confirmation "[e]xcept as otherwise provided in the plan or the order confirming the plan[.]"  Thus, it maintains that § 1322(b)(9) constitutes statutory authority for a plan provision which keeps property in the estate under the protection of the automatic stay, notwithstanding the general rule that property of the estate vests in the debtor upon confirmation.  It contends that this section of the Bankruptcy Code must be interpreted to allow debtors to vest title back in the estate or in third parties under marital agreements "by express consent only, in conjunction with § 1327."

Selene also argues that § 1322(b)(8) does not permit a debtor to transfer real estate to an unwilling secured creditor, as such transfer does not constitute a "payment" of the

claim because delivery of property to a creditor in an "unacceptable form" is not tantamount to delivery of money or an otherwise "valuable thing," citing <u>Black's Law Dictionary</u> (10th ed. 2014). It asserts that state law must control the transfer of real property, and that under state law the consent of a mortgagee to accept a deed in lieu of foreclosure must be express. It points out that it does not consent and argues that the Court cannot compel it to consent to acceptance of the property with the attendant burdens of ownership or otherwise "give up [its] right to do nothing on surrendered property."

IV.   **DISCUSSION**

   A. <u>Background</u>

The Objection presents a frequently arising conflict between Chapter 13 debtors and their mortgage holders and servicers which numerous courts have recently addressed. In this scenario, homeowners, like the Debtor in this case, wish to give their property back to the mortgage lender because they cannot afford their monthly mortgage payments and the home is not worth as much as the mortgage debt encumbering the property, colloquially referred to as an "underwater" property. Moreover, they cannot afford the continued accrual of expenses related to the property, such as real estate taxes and other municipal charges, which constitute liens against the property, and other types of expenses, such as insurance and maintenance costs. The problem is exacerbated in the case where, as here, the property is a condominium unit which is subject to assessments by a condominium association which continue to accrue postpetition and run with the land. Relief under Chapter 7 of the Bankruptcy Code does not assist debtors faced with

12

these issues as the Chapter 7 trustee likely would abandon the estate's interest in such property pursuant to 11 U.S.C. § 554(a) as being "of inconsequential value and benefit to the estate" with the consequence that the property of the estate would revert to the debtor.  In addition, in a Chapter 7 case, a debtor's liability for certain postpetition condominium fees will be nondischargeable under 11 U.S.C. § 523(a)(16) (providing that a debtor shall not receive a discharge for condominium fees or assessments that become due and payable after the bankruptcy petition is filed for as long as the debtor or the trustee "has a legal, equitable, or possessory ownership interest" in the unit.).

Debtors obviously wish to divest themselves of interests in properties to avoid continuing accrual of expenses, which has proved problematic in Chapter 7 cases. *See, e.g.*, Pigg v. BAC Home Loans Servicing, LP (In re Pigg), 453 B.R. 728 (Bankr. M.D. Tenn. 2011).  Accordingly, they have sought relief under Chapter 13 to avoid this interminable limbo and to obtain a fresh start.  Thus, they have proposed plans, such as the one proposed by the Debtor in the present case, to surrender property and deed it back to the mortgagee, commonly referred to as "surrender plus vesting," as the modification of rights of a creditor whose claim is secured only by a security interest in the debtor's principal residence is prohibited in Chapter 13.  S*ee* 11 U. S.C. § 1322(b)(2).

During the past several years, mortgage lenders have delayed conducting foreclosures sales with increasing prevalence for a variety of reasons.  Due to securitization of residential mortgage loans and claims trading, issues concerning the true ownership of mortgages and notes have impaired lenders' ability to establish standing to foreclose.  In recent years, many debtors have challenged the rights of mortgagees to

foreclose, resulting in the need to clear titles in state court.  *See* <u>Eaton v. Fed. Nat'l Mortg.</u>

<u>Ass'n</u>, 462 Mass. 569, 969 N.E.2d 1118 (2012); <u>Bevilacqua v. Rodriguez</u>, 460 Mass. 762, 955

N.E.2d 884 (2011); <u>U.S. Bank Nat'l Ass'n v. Ibanez</u>, 458 Mass. 637, 941 N.E.2d 40 (2011).

In addition, lenders have expressed reluctance to foreclose where they will be saddled

with continuing homeowner or condominium assessments that are liens on the property

senior to their mortgage.

  The resolution of the issue presented does not depend on a balancing of harms

or policy concerns.  Instead, resolution of the issue turns on whether the provisions of

Chapter 13 permit the proposed treatment of the lender's secured claim.  The Court's

analysis must begin with the statute itself to determine if its provisions are plain or

ambiguous.  <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 240, 109 S. Ct. 1026

(1989).

  B.  <u>Applicable Law</u>

  The starting point for the analysis is a review of the pertinent provisions of Chapter

13 of the Bankruptcy Code, which must be read together to understand the operation of

Chapter 13.  *See generally* <u>Barbosa v. Solomon</u>, 235 F.3d 31 (1st Cir. 2000).  First, only a

debtor can propose and file a Chapter 13 plan.  *See generally* 11 U.S.C. § 1321 ("The debtor

shall file a plan.").  Unlike Chapter 11, a Chapter 13 debtor's creditors are not entitled to

vote on the plan.  The contents of a Chapter 13 plan are regulated by § 1322.  Subsection

(a) of that statute dictates what a plan "shall provide."  There are four mandatory

provisions that a Chapter 13 plan must generally contain.  Among other things, a Chapter

13 plan must provide for submission of all of the debtor's future income necessary for the

execution of the plan, must provide for full payment of priority claims unless the holder

of such a claim agrees to a different treatment, and must provide for the same treatment

of claims within the same class. § 1322(a)(1), (2), and (3).   In addition to the mandatory

contents of a plan, a debtor may propose a plan which contains one or more of eleven

(11) permissive provisions.  Two of these allowable provisions are at issue here, namely

§ 1322(b)(8) and (9), which provide as follows.

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> > (8) provide for the payment of all or part of a claim against the debtor
> > from property of the estate or property of the debtor;
> >
> > (9) provide for the vesting of property of the estate, on confirmation
> > of the plan or at a later time, in the debtor or in any other entity; . . .

11 U.S.C. § 1322(b)(8) and (9).

Confirmation of a Chapter 13 plan is governed by 11 U.S.C. § 1325.  In order to

confirm a Chapter 13 plan which treats a secured claim, the Court must find that the plan

provides one of three permissible treatments of a secured claim. Section 1325(a)(5)

provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if-- . . .
>
> > (5) with respect to each allowed secured claim provided for by the plan-
> > (A) the holder of such claim has accepted the plan;
> > (B)(i) the plan provides that--
> > (I) the holder of such claim retain the lien securing such claim
> > until the earlier of--
> > (aa) the payment of the underlying debt determined under
> > nonbankruptcy law; or
> > (bb) discharge under section 1328; and
> > (II) if the case under this chapter is dismissed or converted
> > without completion of the plan, such lien shall also be retained by

such holder to the extent recognized by applicable nonbankruptcy law; and

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

    (iii) if--

        (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

        (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1325(a)(5).  A debtor bears the burden of establishing by a preponderance of the evidence that his or her plan satisfies the requirements of the Bankruptcy Code and is appropriate for confirmation. In re Zair, 535 B.R. 15, 18 (Bankr. E.D. N.Y. 2015).

An order confirming a plan has *res judicata* effect.  *See* United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 275, 130 S. Ct. 1367 (2010).  If the court confirms the plan, its provisions are binding on all creditors and the debtor. *See* 11 U.S.C. § 1327(a). Moreover, § 1327(b) provides that the plan or an order confirming the plan vests property in the debtor, except as provided in the plan or such order.  Section 1327, entitled "Effect of Confirmation," provides as follows:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section

is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

   C. Is Surrender and Vesting Proper Treatment under a Chapter 13 Plan?

   Commenting on the interrelationship of §§ 363, 1322(b)(8) and (9), and 1325(a)(5)(C), the authors of the leading treatise on Chapter 13 observe: "Read together, these sections appear to grant Chapter 13 debtors flexibility to surrender or sell all or part of the property that secures a claim in full or partial satisfaction of the secured claim. The reported cases are less receptive to the surrender or sale of collateral by Chapter 13 debtors."  Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy,* 4th Edition, § 102.1, at ¶[1], Rev. October 20, 2010, Cases Updated January 8, 2016, www.ch13online.com.  Courts have been sharply divided on whether a Chapter 13 debtor may obtain confirmation of a plan that provides for both a surrender of collateral and vesting of the property in a mortgagee.  *Compare* In re Zair, 535 B.R. 15 (Bankr. E.D. N.Y. 2015); In re Sagendorph, Case No. 14-41675, 2015 WL 3867955 (Bankr. D. Mass. June 22, 2015), in which courts have approved plans providing for surrender plus vesting over the objection of the secured creditor[7] *with* Bank of New York Mellon v. Watt, No. 3:14-cv-02051, 2015 WL 1879680, *4 (D. Or. April 22, 2015); In re Sherwood, No. 15-10637, 2016 WL 355520 (Bankr. S.D. N.Y. Jan. 28, 2016); In re Williams, 542 B.R. 514 (Bankr. D. Ks. 2015); In re Lemming, 532 B.R. 398 (Bankr. N.D. Ga. 2015); and, recently, Massachusetts

---

[7] *See also* In re Stewart, 536 B.R. 273, 277 (Bankr. D. Minn. 2015) (addressing a plan to which the creditor failed to object, but adopting the reasoning of Sagendorph and Zair).

Bankruptcy Judge Boroff's decision in <u>In re Weller</u>, No. 12-40418, 2016 WL 164645 (Bankr. D. Mass. Jan. 13, 2016), which have not permitted confirmation of such plans over the objection of a secured creditor.

The camp permitting "surrender plus vesting" plans is exemplified by Chief Judge Hoffman's decision in <u>In re Sagendorph</u>, in which he considered similar plan provisions to those presented in this case, and ruled that surrender and non-consensual vesting in a mortgagee can be proper treatment of a secured claim. As explained by Chief Judge Hoffman, the term "surrender" is not defined in the Bankruptcy Code. In the First Circuit, surrender to a mortgagee does not transfer ownership of the surrendered property, as it is simply an agreement to make collateral *available* to the secured creditor, which the creditor cannot be compelled to accept. <u>Sagendorph</u>, 2015 WL 3867955, at *2 (citing <u>Canning v. Beneficial Me., Inc. (In re Canning)</u>, 706 F.3d 64, 69-70 (1st Cir. 2013); <u>Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)</u>, 462 F.3d 14, 19 (1st Cir. 2006)). Although the term vesting also is undefined in the Code, according to Chief Judge Hoffman, vesting is a common legal term, meaning a transfer of title. <u>Sangendorph</u>, 2015 WL 3867955, at *2. Thus, "surrender is a less consequential event than vesting. Surrender means making the property available to be taken; vesting means transferring title." <u>Id</u>.

A number of other courts agree that vesting plus surrender plans are permissible under § 1322(b)(9) and § 1325(a)(5)(C). *See, e.g.*, <u>In re Zair</u>, 535 B.R. 15, 21 (Bankr. E.D. N.Y. 2015) (agreeing with <u>Sagendorph</u> and holding that "while surrender and vesting are different, they are not mutually exclusive, and the Bankruptcy Code's plain language permits a debtor to deploy both options in a plan."). Other courts have confirmed plans

18

that provide for surrender and vesting where mortgagees received notice but did not

object to surrender and vesting, and thus those mortgagees are deemed to have accepted

the transfer.  *See, e.g*., In re Stewart, 536 B.R. 273 (Bankr. D. Minn. 2015); In re Rose, 512 B.

R. 790 (Bankr. W.D. N.C. 2014);[8] and In re Rosa, 495 B.R. 522 (Bankr. D. Haw. 2013).

Nevertheless, several courts have denied confirmation of surrender plus vesting plans on

the ground that a forcible transfer to the secured party is improper.  *See* Bank of New

York Mellon v. Watt, 2015 WL 1879680 (D. Or. April 22, 2015) (vesting provision

precluded confirmation of plan absent consent of secured creditor); In re Weller, 2016 WL

164645, *4 (Bankr. D. Mass., Jan. 13, 2016) ("A plan which 'vests' property in a secured

creditor does not fulfill the requirements of § 1325(a)(5)(C) and may not be confirmed

over that secured creditor's objection.");  In re Lemming, 532 B.R. 398, 410 (Bankr. N.D.

Ga. 2015) (court denied confirmation of plan which provided for surrender of one

property to judgment creditor who had judicial lien on three properties as § 1325(a)(5)

did not authorize partial surrender of portion of collateral and § 1322(b)(8) did not

authorize involuntary delivery of property as payment; court did not consider §

1322(b)(9) vesting which argument had been waived by debtor).

---

[8] In Stewart, the court gave the holder of the mortgage on the debtor's condominium
unit the choice of accepting a quitclaim deed, or initiating foreclosure proceedings. In
the event that the mortgagee exercised neither option, the court authorized the debtor
to record the quitclaim deed. Stewart 536 B.R. at 278-79.  In Rose, the court ruled that
the mortgage holder, the SBA, could not be required to accept title but permitted the
debtors to tender a quitclaim deed to the SBA for its consideration.  Rose 512 B.R. at
797-798. In the event the SBA failed to record or reject the deed or initiate foreclosure
proceedings, the court authorized the debtors to record the deed.  Id.

Judge Hoffman's thorough opinion sets forth a number of reasons in support of a debtor's ability to surrender and vest property in a mortgagee:   1) the plain language of § 1322(b)(9) permits a plan to vest property in the estate in any entity upon confirmation; 2) vesting of property pursuant to § 1322(b)(9) is compliant with and does not conflict with § 1325(a)(5)(C) as surrender is the preliminary step in the process of transferring title, and vesting is a method of effectuating § 1322(b)(8) which also plainly permits "the payment of all or part of a claim against the debtor from property of the estate or property of the debtor[;]" and 3) state law requirements of creditor consent to a transfer of ownership are preempted by the Bankruptcy Code's express reorganization provisions which advance the fresh start policy.   Judge Hoffman cautioned, however, that a "dirt for debt" plan may not always be confirmable, as bad faith objections, or other extraordinary circumstances, such as environmental contamination or debtor-induced deterioration, may preclude confirmation of a surrender plus vesting plan. Sangendorph, 2015 WL 3867955, at *5-6.   No such claim was made in his case, and Judge Hoffman confirmed the plan over the mortgagee's objection.

In the case of In re Zair, 535 B.R. 15 (Bankr. E.D.  N.Y. 2015), Judge Trust ruled that the surrender and vesting provisions of Chapter 13, while different, are not mutually exclusive concepts and can be used in concert to obtain confirmation of a plan that calls for deeding property to the mortgagee, even in the face of an objection by the secured creditor.   Id. at 21.  According to that court, vesting is not limited to situations where a secured creditor consents as vesting is permitted in a specific non-debtor entity or the debtor under § 1327(b).  Id. at 22.  In addition, vesting provides a mechanism to convey

20

legal title to the secured creditor, is in accordance with the policy of Chapter 13 that a

debtor has the right to shed property that he or she cannot afford, and is in accordance

with the premise of <u>Associates Commercial Corp. v. Rash</u>, 520 U.S. 953, 117 S. Ct. 1879

(1997), that a lender gets immediate access to its surrendered collateral.  <u>Zair,</u> 535 B.R. at

23.  Moreover, the <u>Zair</u> court reasoned that requiring a Chapter 13 debtor to continue to

incur liabilities with respect to property ownership prejudices other creditors by

decreasing a debtor's disposable income, resulting in lower plan payments. <u>Id</u>. at 23-24.

Furthermore, Judge Trust agreed with the reasoning of <u>Sagendorph</u>, that the provisions

of Chapter 13 preempt state laws that conflict.  <u>Id</u>. at 24.  Additionally, the <u>Zair</u> court

observed that surrender plus vesting does not obviate the necessity of determining the

secured claim and any deficiency, which may be the subject of a general unsecured claim.

<u>Id</u>.  The <u>Zair</u> court concluded that the debtors complied with the confirmation

requirements of § 1325(a)(5) by surrendering the property to the secured creditor and

permissibly vested the property in the secured creditor at confirmation pursuant to §

1322(b)(9), subject to the secured creditor's right to file a deficiency claim, the amount of

which the court could determine at a later date.  <u>Id</u>. at 26.

Although some recent decisions have permitted surrender and vesting in tandem

to confirm plans transferring property to mortgagees, this Court recognizes that a

number of courts, including one from this district, have rejected surrender and vesting to

permit a transfer of property to a mortgagee.  <i>See</i> <u>In re Weller</u>, 2016 WL 164645 (Bankr.

D. Mass. Jan. 13, 2016). Although the bankruptcy court in <u>In re Watt</u>, 520 B.R. 834, 839

(Bankr. D. Or. 2014), had permitted surrender and non-consensual vesting based on the

reasoning that nothing in § 1322(b)(9) requires consent, the district court reversed the bankruptcy court's decision, and determined that nonconsensual vesting is impermissible absent the secured creditor's consent to the transfer, and that equitable considerations cannot alter the consent requirement. *See* <u>Bank of New York Mellon v. Watt</u>, 2015 WL 1879680, at *7 (D. Or. April 22, 2015).[9]

The reasoning of these courts is flawed for a number of reasons. First, they do not recognize or give proper weight to the plain and unambiguous language of § 1322(b)(9) which does not require creditor consent, and they do not attempt to reconcile its provisions with § 1325(a)(5)(C). Neither of these provisions are subordinate to the other, and nothing in § 1325(a)(5)(C) undercuts a debtor's ability to rely on the permissive provisions in § 1322(b). As observed by Judges Lundin and Brown: "There is nothing in § 1322(b)(8) or (b)(9) or in § 1325(a)(5)(C) requiring any magic words or suggesting other conditions." Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Edition, § 102.1, at ¶[4], Rev. Oct. 20, 2010, Cases Updated Jan. 8, 2016, www.ch13online.com. Secondly, these courts improperly impose a state law requirement of consent to vesting of title where none exists in bankruptcy law. Third, state law restrictions concerning a mortgagor's ability to force a mortgagee to take title to the mortgaged property must yield to the preemptive provisions of the Bankruptcy Code which clearly allow vesting of property of the estate on confirmation of a plan in the debtor or in any other entity without the necessity of consent. *See* 11 U.S.C. §§ 1322 and 1327. Pursuant to § 101(15),

---

[9] The district court's decision is currently on appeal to the Court of Appeals for the Ninth Circuit.

the term "entity" is a defined term, and includes a "person" which, in turn, is defined in § 101(41) to include a partnership or corporation, such as Selene.  Fourth, cases such as <u>Weller</u> essentially impose a requirement that a secured creditor consent to surrender which not only adds an element not found in § 1325(a)(5)(C), but makes that section redundant with § 1325(a)(5)(A).  Congress did not include the requirement of consent in either §§ 1322(b)(9) or 1325(a)(5)(C).

Finally, courts which reject surrender plus vesting plans unduly emphasize the difficulties that mortgagees face in taking over properties, ignoring that the lenders granted mortgages while cognizant of the risks of default and bankruptcy, as well as the potential existence of senior statutory liens for unpaid taxes and homeowner or condominium association charges, and the possibility of junior liens in favor of judgment creditors and junior mortgagees. The accrual of senior statutory liens is a predictable consequence of mortgagor defaults, is readily foreseeable by mortgagees at the time a mortgage is granted and is a risk that is assumed by mortgagees in the residential mortgage industry.  Indeed, mortgagees can mitigate these losses by foreclosing as promptly as state law permits following relief from stay obtained in the Bankruptcy Court.  Likewise, a mortgagee can avoid the effect of junior liens by proceeding with its foreclosure rights.

It is difficult for this Court to countenance the argument advanced by Selene in its Objection that vesting would preclude it from conducting a foreclosure sale on the property, resulting in "an inability to remove the junior liens which [would be] wiped out in a foreclosure sale" when Selene and its predecessors have refused to proceed with

23

their foreclosure rights for more than 18 months after Bank of America sought and obtained relief from stay from this Court to do that very thing. Selene has articulated no reason, let alone a legitimate one, for the delay in exercising its state law remedies of foreclosure. Instead, it simply argues that surrender cannot be accomplished through vesting and that vesting was meant to apply to marital agreements, or to other entities by express consent only. If Selene or Bank of America wished to avoid the burden of other liens on the property, they should have foreclosed when given permission to do so, and not delayed to the prejudice of the Debtor and other creditors in objecting to the Plan.

Selene's argument that vesting under § 1322(b)(9) is a vehicle in aid of § 1327(b) and meant to apply to the estate or third parties by express consent only is an attempt to insert words and additional elements into § 1322(b)(9) and thus must fail. Selene ignores the plain language of the statute that a plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor *or in any other entity[.]*" 11 U.S.C. § 1322(b)(9)(emphasis added). Selene is clearly an entity other than the Debtor in which the Debtor may vest property. Consent is not a requirement of § 1322(b)(9), nor is it a requirement of § 1327(b) and its absence from both statutory provisions supports the Debtor's ability to vest title in a third party without consent, subject to good faith considerations as articulated by the court in <u>Sagendorph</u>.

Section 1322(b)(8) also supports the Debtor's treatment of Selene's claim through vesting and surrender. This section permits a Chapter 13 debtor to provide for payment of all or part of a claim against the debtor from property of the estate or property of the debtor. The term "payment" is not a defined term in the Code. It is unclear whether the

term means payment in cash or by a transfer of property.  Black's Law Dictionary defines

"payment" as either money or an "other valuable thing so delivered in satisfaction of an

obligation." <u>Black's Law Dictionary</u> (10th ed. 2014).   The Court construes this definition

to include transfer of collateral to the secured creditor, especially where, as here, the

parties have reported that they are unaware of damage or environmental issues

concerning the property and its value appears to have appreciated since the petition date

from $75,000, as originally scheduled by the Debtor in 2014, to $139,000 as of July 2015,

as determined by Selene's broker's price opinion.  Moreover, as provided in the Plan,

Selene has the right to file a proof of claim for any deficiency and share in the distribution

with the one unsecured creditor to have filed a proof of claim.  Selene cannot simply

assert that the property is in an "unacceptable form" or is otherwise not a "valuable

thing" without articulating any reason for its failure and refusal to initiate foreclosure

proceedings even months after the expiration of the period set forth in the "150 Day Right

to Cure Your Mortgage Default."   There is nothing in § 1322(b)(8) that requires an

additional element of consent of a mortgagee to a transfer of property as treatment of a

secured claim.

The Court is aware of contrary authority denying confirmation of a plan providing

for partial vesting in satisfaction of a judicial lien as beyond the scope of § 1322(b)(8). *See*

<u>In re Lemming</u>, 532 B.R. 398 (Bankr. N.D. Ga. 2015).  That decision is distinguishable from

the present case. First, the plan in that case provided for the surrender of one of three

properties on which a creditor's judicial lien attached.  Secondly, the judicial lien creditor

was not a mortgagee, and did not bargain for ownership of the property as mortgage

holders do. Finally, this Court observes that the <u>Lemming</u> court relied on the legislative history of § 1322(b)(8), commenting that plans could be funded out of future income and through liquidation of the debtor's property, in concluding that payment of claims from property of the estate or debtor only could be made after such property was liquidated. <u>Id</u>. at 409-10. This Court disagrees with the <u>Lemming</u> court's determination that the statute is ambiguous, where it simply provides that claims may be paid from property of the estate or the debtor. There is no temporal requirement or prerequisite for liquidation of an asset in the language of § 1322(b)(8). The <u>Lemming</u> court's extension of the legislative history was unwarranted and inconsistent with the plain language of the statute.

The Court concludes that a plan proposing surrender under § 1325(a)(5)(C) is confirmable notwithstanding the Debtor's additional election of the payment and vesting options available to him under the permissive provisions of § 1322(b)(8) and (9). As did the courts in <u>Sagendorph</u> and <u>Zair</u>, this Court determines that there is no conflict between these provisions. A reading of those three provisions together permit a debtor's deployment of both surrender and vesting in a plan. To determine otherwise "essentially eliminates the usefulness of § 1322(b)(9)[.]" <u>Zair</u>, 535 B.R. at 21. The Debtor's Plan proposes surrender of the property under § 1325(a)(5)(C) and, therefore, meets the requirements for confirmation of a plan which treats secured claims. The Debtor has made the property available to Selene and its predecessors for a period exceeding 18 months. Selene has made an election to pursue its perceived "right to do nothing on [the] surrendered property." Such prolonged, unexplained and prejudicial inaction, following

26

a request for relief from stay, is inconsistent with and completely undermines the reorganization provisions and the fresh start policy of the Bankruptcy Code, and may be redressed by the Debtor through the payment and vesting provisions of § 1322(b)(8) and (9).

As discussed at length by the court in <u>Sagendorph</u>, a creditor need not simply relent when confronted with "a plan that proposes dirt for debt" -- a secured creditor can still challenge a Chapter 13 plan as being proposed in bad faith or contrary to Bankruptcy Code requirements. <u>Sangendorph</u>, 2015 WL 3867955, at *5-6. Although Selene decries the potential negative consequences of obtaining title to properties contaminated by hazardous waste or subject to dangerous defects or health code violations and the like, it has not asserted that any of these problems exist with respect to the property. Indeed, the parties agree that they are unaware of *any* damage to the property or environmental issues related to the land upon which the condominium unit is built.

## V.    CONCLUSION

For the reasons set forth above, the Court finds that the Debtor has established that the Plan satisfies the requirements of the Bankruptcy Code, including the mandatory provisions of § 1322(a) and the permissive ones under § 1322(b)(8) and (9), as well as the requirements for confirmation under § 1325. Accordingly, the Court overrules the

Objection and directs the Trustee to submit a proposed Order of Confirmation.  A

separate Order shall enter.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 4, 2016